# CHARLESTON

Fisher v. Sun Insurance Co.

Submitted September 3, 1914.    Decided September 15, 1914.

1. Insurance—*Policy—Compliance With Iron Safe Clause.*

   A clause in a fire insurance policy requiring the insured to "keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit," is not complied with by keeping books which do not show the items sold but only the gross amounts of weekly sales. (p. 696).

2. Same—*Severable Policy—Liability.*

   · Where an insurance policy is issued covering different clasess of property, each insured for a stated amount, and there is a breach of a condition or warranty respecting one class not affecting the risk as to others, the contract should not be considered as entire but as severable, and a recovery allowed on account of the property not affected by the breach, notwithstanding the policy stipulates that it shall be void and no action brought on it when any one of its conditions or warranties are broken; provided the insured has committed no fraud and no act prohibited by public policy is involved. (p. 699).

3. Same—*Severable Policy—Breach of Iron Safe Clause—Rigth of Recovery.*

   A breach of the iron safe clause in a policy of fire insurance, covering a stock of merchandise, fixtures, household furniture and the building containing them, each insured for a specified sum, avoids the policy only in respect to the stock of merchandise. (p. 699).

4. Evidence—*Parol—Insurance Policy.*

   Parol evidence is admissible to contradict the terms of a fire insurance policy, respecting the location of the property and the insured's estate therein, when oral application for insurance was made to the insurer's agent, and the insured, several days there-

after, received his policy by mail and failed to read it until after the loss. (p. 699).

Error to Circuit Court, Kanawha County.

Action by C. S. Fisher against the Sun Insurance Company of London. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*W. T. Porter* and *S. C. Burdett,* for plaintiff in error.

*U. S. Albertson,* for defendant in error.

WILLIAMS, JUDGE:

In an action on a fire insurance policy issued July 3, 1912, plaintiff recovered a judgment for $2,086.42, and defendant was awarded this writ of error.

The insurance covered real estate and personal property as follows, viz: $450 on a building, occupied by plaintiff both as a store and a dwelling; $1,300 on his stock of merchandise; $200 on fixtures; and $200 on household furniture, therein. The building and its contents were totally destroyed by fire on October 19, 1912. The defense is that plaintiff failed to comply with certain conditions and warranties contained in the policy. One is that the policy describes the building as situate "on the Charleston and Ripley Turnpike, Sissonville, W. Va., (Kanawha County)," while it is proven to be located on the turnpike a mile and a half from Sissonville. Defendant contends that plaintiff concealed or misrepresented its true location, and that, if it had known that the property was not located at Sissonville, it would not have taken the risk. It is well known that the risk as well as the rate of premium charged by insurance companies varies according to the location of the property. 19 Cyc. 664. Sissonville is a small town and is the name of the post office where plaintiff received his mail, and it may be that the actual location of plaintiff's property, being one and half miles from Sissonville, comes within the description of the location given in the policy. The language does not necessarily mean that the property is *in* Sissonville, and may with equal propriety, mean *near to* Sissonville. But assuming that the location is

a material matter affecting the risk, and that the actual location is materially variant from that given in the policy and would vitiate it, yet there is conflict in the testimony respecting the information which plaintiff gave to defendant's agent concerning the location when he applied for insurance. Plaintiff testifies positively that he told the agent it was a mile and a half "this side of Sissonville," meaning on the side next to the city of Charleston where witness was when he was testifying. He further testifies that he received his policy by mail and only read a few lines of it, and therefore did not know what it contained. The agent testifies, to the best of his recollection, that when plaintiff applied for the insurance he represented the property to be located at Sissonville, and says he wrote down on paper, at the time, what plaintiff told him and afterwards transcribed it into the policy. But the original writing was not produced, nor does it appear that plaintiff saw it after it was prepared. The question was, therefore, one of fact for the jury to determine from the conflicting testimony, and if this were the only error relied on it would not justify a reversal. If the agent wrote the description different from what he was told, it was a fraud and oral evidence was admissible to prove it.

The next point raised is that defendant is not liable, because plaintiff did not comply with the iron safe clause of the policy. That clause bound the assured to "take a complete itemized inventory of stock on hand at least once in each calendar year," and, unless such inventory had been taken within twelve months prior to the date of the policy, he was bound to take such inventory "in detail within thirty days of the issuance of this policy." Plaintiff was also required to keep a set of books which should contain a "complete record of business transacted, including all purchases, sales and shipments, both for cash and credit from the date of the inventory," which were to be kept locked in a fire proof safe at night and at all other times when the building was not open for business, or, failing in this, he was to keep such books and inventories in a place not exposed to fire which would destroy the building. The policy also stipulated that non-compliance with these conditions should render it void and bar any recov-

ery thereon. It is contended there has been a breach of these warranties, and that the entire contract is avoided. The iron safe clause is a promissory warranty and provided for a complete record of the mercantile business transacted by plaintiff, both purchases and sales of goods, as well for cash as on credit, and for the preservation of the same in order that the amount of loss, if any occurred, might be definitely and satisfactorily ascertained. Plaintiff did not keep an iron safe, nor did he at any time take such inventory of his stock of merchandise as is contemplated. He had been conducting a mercantile business, in the same building, for about eleven months prior to obtaining insurance; and, in order to prove the amount of his loss on the stock of merchandise, the court permitted him to introduce, over defendant's ob-. jection, evidence of invoices made and furnished to him by wholesale merchants from whom he had purchased goods, extending back over the whole time he had been engaged in business. Plaintiff had some of those bills in his possession at the time of the fire and others were supplied to him thereafter by the wholesale merchants. From the gross amount of those invoices he was permitted to deduct the gross amount of his weekly sales, which had been kept in a pencil pad to which, plaintiff says, they had been transcribed from a similar pad containing accounts of daily sales, at the end of each week. The weekly sales did not show the items but only the gross amounts in figures, as for instance, "1911, Aug. 5, First Week 21.81; Second Week 29.27," and so on, with each consecutive week, up to and including the sixty-fifth week which ended with the date of the fire. The pads containing the itemized accounts of daily sales, made after the insurance was written, were not produced, and plaintiff says the last one was left in the store on the night of the fire and was destroyed. The foregoing facts show a non-compliance with the warranties contained in the iron safe clause. Plaintiff does not pretend to have taken an inventory of his stock of goods, either within a year before the insurance was written or within thirty days thereafter, such as is contemplated by the policy. The inventory provided for meant a listing of the goods in the store according to their kind and value. An invoice sup-

plied after the fire by the wholesale merchants from whom plaintiff had purchased them many months before, is not equivalent to taking and preserving an inventory of the goods in store, nor can proof of loss in that manner be substituted for the method provided for by the policy. The invoices do not prove that the goods were actually received and placed in the building by the insured.

"An invoice of goods purchased is not an inventory of stock to be produced under the 'iron safe clause' of a fire policy." *Southern Fire Ins. Co.* v. *Knight,* 111 Ga. 622. *Day* v. *Home Ins. Co.,* 177 Ala. 600, 58 Sou. 549; *Shawnee Fire Ins. Co.* v. *Thompson and Rowell,* 119 Pac. 985, 30 Okl. 466; *Royal Fire Ins. Co.* v. *Kline Brothers Co.,* 198 Fed. Rep. 468; *Home Ins. Co.* v. *Delta Bank,* 71 Miss. 608; *Phila. Fire Assn.* v. *Masterson,* 25 Tex. Civ. App. 518; *Hartford Fire Ins. Co.* v. *Adams,* (Tex. Civ. App.), 158 S. W. 231; *Scottish Union Ins. Co.* v. *Virginia Shirt Co.,* 113 Va. 361, 74 S. E. 228; *Penix* v. *American Cent. Ins. Co.,* (Miss.), 63 Sou. 346; *Everett-Ridgley Co.* v. *Ins. Co.,* 121 Ga. 228; *German Ins. Co.* v. *Bates,* 67 Ill. App. 370.

The case was not briefed or orally argued in this court by counsel for plaintiff, and it is suggested in brief of counsel for defendant that the trial court was induced by the decision of this court in *Ruffner Bros.* v. *Insurance Co.,* 59 W. Va. 432, to let in proof of loss in the manner complained of. That case differs materially from this, in that the stock of goods in that case was entirely new at the date of insurance, having been placed in the building but a few days before, while in the present case plaintiff had been adding to, and selling from, his stock for a period of eleven months before it was insured. Judge POFFENBARGER, who wrote the opinion in the Ruffner Bros. case, expressly says that the invoices would not constitute an inventory, within the meaning of the policy, in the case of a store which had been conducted for a considerable time; and Judge BRANNON, although concurring in the opinion, expressed a doubt whether such invoices could take the place of an inventory in any case. That the promissory warranty, generally denominated the "iron safe clause" is

reasonable and that a compliance therewith is material is too well established to require a citation of authorities.

But the iron safe clause relates only to the stock of merchandise, and non-compliance with it does not necessarily affect defendant's liability with respect to the other property insured. It was not intended to apply to the building itself, the household furniture, or the fixtures in the building; and notwithstanding the policy expressly provides that it shall be void and no action shall be maintained upon it, if any of the warranties are violated, the rule established by the great weight of decisions is, that, in the absence of fraud or any act condemned by public policy, the contract is divisible and recovery may be had for the loss of other property not affected by the particular warranty broken. The risk as to the building, fixtures and household furniture is in no wise increased by a failure to preserve an account of the mercantile transactions. *Mitchell* v. *Mississippi Home Ins. Co.*, 72 Miss. 53, 18 Sou. 86, 48 Am. St. Rep. 535; *Miller* v. *Delaware Ins. Co.*, (Okl.), 75 Pac. 1121, 65 L. R. A. 173; *Miller* v. *Scottish Union & National Fire Ins. Co.*, (Okl.), 75 Pac. 1135; *Roberts, Willis & Taylor Co.* v. *Sun Mut. Ins. Co.*, 13 Tex. Civ. App. 64, 35 S. W. 955; *Georgia Home Ins. Co.* v. *McKinley*, 14 Tex. Civ. App. 7, 37 S. W. 606; *Sun Mut. Ins. Co.* v. *Tufts*, 20 Tex. Civ. App. 147, 50 S. W. 180. Contra: *Southern Fire Ins. Co.* v. *Knight*, 111 Ga. 626, 36 S. E. 821.

Defendant further insists that the policy is avoided because plaintiff had only a leasehold estate for years in the building insured, whereas the policy contains the provision that "if the subject of insurance be a building on ground not owned by the insured in fee simple," the policy shall be void. Plaintiff was permitted to testify, over objections, that he informed defendant's agent when he applied for insurance of the character of his estate in the property, and also that he did not read his policy until after the fire and was therefore ignorant of its contents. Plaintiff did not make written application, and he swears positively that he told the agent that he had only a fifteen year lease and that he paid a rental of $5 a year for it. But this is denied by the agent. This question, like the one relating to the location of the property,

was for jury determination, and we would have no right to disturb the verdict on this fact, which, in view of the general verdict, the jury evidently found in favor of plaintiff; provided the testimony tending to prove it was admissible. If plaintiff advised the agent correctly respecting his estate and the agent wrote it in the policy differently, or if the printed policy contained a statement representing the insured to be the fee simple owner and the agent failed to change it to make it accord with the fact, it would be a fraud. In such case parol testimony is admissible to contradict the terms of a written contract. Otherwise the fraud could not be shown. This question was fully discussed and decided in *Medley* v. *Insurance Co.*, 55 W. Va. 342. The authorities on the subject are there pretty well collated by Judge POFFENBARGER in his opinion, and we deem it unnecessary to enter upon a discussion of it here. If, however, the jury should be of the opinion that plaintiff's testimony on this point is untrue, there would be a breach of a warranty so vital as to render the entire policy void. Because the less valuable plaintiff's estate in the building is the greater would be the insurer's risk; and the increase of risk on the building would necessarily increase the risk on the personal property contained in it.

At the conclusion of plaintiff's evidence there was a motion by defendant to exclude it which was overruled and it excepted. Defendant however waived the exception by subsequently introducing evidence on its own behalf. It is unnecessary to cite cases in support of this rule so frequently announced by this court.

It does not appear that the court gave any instructions at the request of plaintiff, but defendant complains of the refusal to give certain ones of its instructions and the modification of others. In view of what we have already said, it was not error to refuse defendant's peremptory instruction to find for the defendant.

It was error to give instruction No. 2 which is as follows: 'The jury are instructed that when parties have made a written agreement such as the policy in this case, said policy is regarded as the exclusive evidence of the contract, and

all oral negotiations and stipulations preceding or accompanying the execution of said policy are merged in it, and are not admissible in evidence, and all such oral negotiations and stipulations, if any, should not be considered by you to contradict or vary the policy in this case." This instruction was prejudicial to plaintiff, because it told the jury, in effect, not to consider any oral testimony that contradicted the terms of the policy. If the jury had regarded this instruction they would have found for defendant, for plaintiff himself admits that he had but a leasehold estate, while the policy itself stipulates that if he is not the fee simple owner he can not recover.

Instruction No. 3 is also erroneous. Non-compliance with the promissory warranties respecting the taking of inventories and the preserving of books of. accounts in an iron safe, does not necessarily call for a verdict for defendant. If not entitled to recover for the stock of merchandise plaintiff may still be entitled to recover for other property insured. Instruction No. 4 is likewise erroneous for the same reason. Instruction No. 6, we think, correctly defines the term "inventory" as used in the iron safe clause, but it is erroneous in that it tells the jury to find for the defendant in case they find this clause has not been complied with. Their finding, under this instruction, should be limited to the insurance on the stock of merchandise.

In view of the fact that plaintiff had been conducting a mercantile business in the building for eleven months prior to taking out insurance, and had not at any time taken an inventory of his stock of merchandise, the court should not have modified instructions Nos. 7 and 15, but should have given them as originally prepared. Plaintiff's own testimony shows clearly that there has been no substantial compliance with the iron safe clause.

It was not error to modify, and give to the jury as so modified, instructions Nos. 8, 9, and 18. The modifications were properly made to permit the jury to consider the oral testimony concerning representations made to the agent at the time of plaintiff's application for insurance respecting his estate in, and the location of, the building.

For reasons hereinbefore given it was error to give instruction No. 19, either as originally presented or as modified by the court.

We reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed and Remanded.*